464 P.2d 608

Karl J. NIELSON and Best Auto Parts,
a corporation, Appellants,

v.

John E. SAVOY et al., Appellees.

No. 9811.

Supreme Court of Arizona.

In Banc.

Jan. 30, 1970.

Dowdall, Harris, Hull & Terry, by Richard J. Dowdall, Tucson, for appellants.

Browder, Gillenwater & Daughton, by Donald Daughton, Phoenix, for John E. Savoy.

Riddel & Riddel, by Harold Riddel, Phoenix, for M. Stanley Reed.

McFARLAND, Justice:

Karl J. Nielson and Best Auto Parts, a corporation, hereinafter referred to as "Nielson", brought an action against M. Stanley Reed, hereinafter referred to as "Reed", to recover damages for an alleged breach of contract, and against John E. Savoy, hereinafter referred to as "Savoy", to recover damages for an alleged breach of duty as an escrow agent. Savoy moved for summary judgment which was granted. From this judgment Nielson appeals.

Best Auto Parts, an Arizona corporation, was owned equally by Nielson and Reed. Nielson alleged that on or about the 15th day of April, 1966, he entered into an oral agreement with Reed to purchase all of Reed's stock for the sum of $7,500; Reed represented to Nielson at the time of the agreement that Best Auto Parts owned $3,800 in accounts receivable and that there was no indebtedness; that Nielson "caused to be placed in escrow with John Doe, attorney for M. Stanley Reed, the sum of $7,500.00 with instructions to said John Doe that the said $7,500.00 was to be delivered to defendant, M. Stanley Reed, after an audit was caused to be made of

the business to determine the accuracy of the said representations of defendant, M. Stanley Reed." The suit was filed against "John Doe" and thereafter "John E. Savoy" was established as the defendant.

Nielson also alleged that the audit was conducted which showed that there was only $1,500 in accounts receivable and that the corporation, instead of being debt free, owed $4,793.27. That prior to the audit, Reed wrongfully, to the damage of Nielson and in derogation of said agreement, contrary to the instructions, caused the escrow holder to deliver the $7,500 check to Reed.

In a second count Nielson alleged that Reed became employed by the corporation as a Managing Officer at a salary of $150 per week and thereafter, without authority of the corporation or its Directors or by their ratification, Reed wrongfully and unlawfully withheld from the corporation the sum of $200 per week for a period of twenty-four weeks, to the corporation's damage in the sum of $1,700.

Reed answered admitting that Nielson, as owner of 50% of the stock of Best Auto Parts, a corporation, entered into an oral agreement to buy Reed's stock for the sum of $7,500 and that Nielson delivered a check to him in the sum of $7,500 to be placed in escrow with Savoy with oral instructions to Savoy to deliver the $7,500 to Reed upon receipt of Reed's stock in the corporation properly endorsed for delivery to Nielson.

Savoy answered admitting that Nielson, as owner of 50% of Best Auto, entered into an oral agreement to buy 50% of the stock from Reed for the sum of $7,500 which was placed in escrow with him by Reed with oral instructions that the $7,500 was to be delivered to Reed upon Savoy's receipt of the stock of Reed properly endorsed for delivery to Nielson; that he complied completely with the terms of the escrow and denied that he breached any duty to Nielson or the Best corporation.

After Nielson's deposition was taken, Savoy filed a motion for summary judgment. In support of his motion, he attached an affidavit, the material parts of which state:

"3. In the latter part of April or early May, 1966, he was advised by Mr. Reed that an agreement had been entered into between Mr. Nielson and himself whereby Mr. Nielson would purchase the 50% of the stock owned by Mr. Reed for $7,500.00.

4. He was asked by Mr. Reed to serve as escrow agent for the transaction, and to hold Mr. Reed's stock certificates and Mr. Nielson's check in the amount of $7,500.00 until the transaction was fully completed.

5. Mr. Reed was the only person who gave him any instructions as to the terms of the escrow agreement.

6. When the instructions as given him by Mr. Reed were fully complied with, he turned the $7,500.00 check over to Mr. Reed and retained the stock certificates to be picked up by Mr. Nielson.

7. At no time did Mr. Nielson or any agent of Mr. Nielson advise him of any instructions pertaining to the escrow agreement or that he had violated any term thereof until after the check had been turned over to Mr. Reed."

Nielson filed his opposition to the motion for summary judgment contending that there existed a question of material fact as to both Count One and Count Two; that the facts in the instant case do not permit a summary judgment under 16 A.R.S., Rule 56(c), Rules of Civil Procedure, which provides:

" * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

This Court has held that summary judgments should not be granted unless it is definitely established that there is no genuine issue of fact; that it is sufficient to prevent summary judgment if a party asserts a disputed fact which, if proven, could affect final judgment. Elerick v. Rocklin, 102 Ariz. 78, 425 P.2d 103; Elson Development Co. v. Arizona Sav. & Loan Ass'n, 99 Ariz. 217, 407 P.2d 930; Arizona Coffee Shops, Inc. v. Phoenix Downtown Parking Ass'n, 95 Ariz. 98, 387 P.2d 801; Lujan v. MacMurtrie, 94 Ariz. 273, 383 P.2d 187; Nyberg v. Salt River Project Agr. Imp. and Power Dist., 91 Ariz. 397, 372 P.2d 727; Colby v. Bank of Douglas, 91 Ariz. 85, 370 P.2d 56; Sarti v. Udall, 91 Ariz. 24, 369 P.2d 92; Peterson v. Valley Nat. Bank of Phoenix, 90 Ariz. 361, 368 P.2d 317.

However, we have held that a summary judgment may be properly granted when the pleadings, depositions and affidavits present no genuine issue as to any material fact. Knight v. DeMarcus, 102 Ariz. 105, 425 P.2d 837; Martin v. Burns, 102 Ariz. 341, 429 P.2d 660; Hoopes v. Lamb, 102 Ariz. 335, 429 P.2d 447. In the instant case Nielson alleges that he caused the escrow instructions agreed upon between Reed and himself to be given to Savoy by Reed. He admitted in his deposition that he depended upon Reed to convey the escrow instructions to Savoy. In his deposition he testified:

"Q How did you communicate to Mr. Savoy the terms of the escrow?

"A It was agreeable between all the parties at this meeting that Stan Reed would communicate with Mr. Savoy, have him hold the check which I gave and also the stock until such time as these facts were verified as to the financial condition of the business; at such time then the transfer of stock and of cash would be made.

"Q How were the escrow instructions communicated to Mr. Savoy?

"A This was left to the responsibility of Mr. Reed to convey this to Mr. Savoy.

"Q Let me ask you specifically, did you at any time personally ever deliver any instructions to Mr. Savoy with regard to the escrow?

"A At this time I went into the hospital with an operation and I was not in any position to convey or talk to Mr. Savoy.

"Q So the record is clear, please, answer it yes or no. Did you at any time ever personally convey to Mr. Savoy any instructions, either written or oral, as to the manner in which the escrow was to be handled?

"A No."

*     *     *     *     *     *

"Q Mr. Savoy wasn't at that meeting, was he?

"A No, he wasn't.

"Q All he knew about that meeting is what Reed told him?

"A Yes, what he told me—

"MR. DOWDALL: As far as you know.

"A Yes, as far as I know. I don't know what Stanley Reed told Mr. Savoy. I can only tell you what Stanley Reed agreed to do in front of Newell Cooper, John Price and Karl Nielson, and I don't know whether Bob Barnes was there.

"Q But so far as you know, Mr. Savoy did exactly what Mr. Reed told him he was to do, is that correct?

"A I don't know that.

"Q You don't know that he didn't?

"A I don't know that he didn't or he did."

Savoy, in his affidavit, states that no one talked to him about instructions as to the escrow except Reed, and that he followed Reed's instructions. Nielson contends that the word "instructions" in Savoy's affidavit is susceptible to four inferences, one being a "transaction" in the manner alleged in appellant's complaint; that these inferences create a question of fact which prevents the Court from granting summary judgment. The

pleadings and the deposition of Nielson are unqualified in that no escrow instruction was given to Savoy other than by Reed. Nielson states in his brief that Savoy's version of the instruction in his pleadings was:

"* * * (U)pon oral instruction to (Appellee) the said Seven Thousand Five Hundred Dollars ($7,500.00) was to be delivered to * * * Reed upon receipt by (Appellee) of the stock of Best Auto Parts owned by * * * Reed, properly endorsed for delivery to * * * Nielson."

On the other hand he contends that the words in Savoy's affidavit "until the transaction was fully completed" places a duty upon Savoy "to acquaint himself with the terms of the escrow". This could not be true if Reed's instruction to him were definite as stated in Savoy's answer. The allegations of Nielson's complaint coupled with his deposition show that the manner in which he caused the instruction to be given to Savoy was solely his reliance upon Reed. If the case were tried and the evidence was as set forth, a court would be compelled to give judgment for Savoy. Savoy made a prima facie showing of no genuine issues. In Dobson v. Grand International Broth. of Locomotive Engineers, 101 Ariz. 501, 421 P.2d 520, this Court stated:

"* * * It is well settled in the Federal courts and in this jurisdiction that when the party moving for a summary judgment has made a prima facie showing that no genuine issues exist for trial, then the opponent of the motion has the burden to produce sufficient evidence to show that there is an issue, and the opposing party cannot defeat a motion for summary judgment and require a trial by a bare contention that an issue of fact exists. He must show that evidence is available which would justify a trial of the issue. Surkin v. Charteris, 197 F.2d 77, (5 Cir., 1952); Morgan v. Sylvester, 125 F.Supp. 380 (S.D.N.Y., 1954); United States v. Dau-

bendiek, 25 F.R.D. 50 (N.D. Iowa E.D., 1959); 3 Barron & Holtzoff, Federal Practice & Procedure (Rules Ed.), § 1235."

Nielson had the opportunity to come forward and show there was evidence available which would justify a trial of the issue. Nielson has not met this burden. He has merely relied upon his interpretation of the words "until the transaction is fully completed" to be sufficient proof that Reed gave the instructions which he states that he agreed to give at the time of their agreement for the sale of the stock. This falls far short of meeting the required burden of proof.

In Nielson's second count he incorporates the allegations in count one and further alleges Reed was employed at a salary of $150 per week and that Reed, without authority, "wrongfully and unlawfully withdrew from the corporation $200.-00 per week". This allegation does not set forth a cause of action against Savoy. There was no causal connection alleged between Savoy's conduct and the alleged malfeasance of Reed in connection with the alleged overpayment to Reed. Savoy in his affidavit states:

"At no time during the existence of the Best Auto Parts Corporation did he have any part in the determination of or payment of the salary to Mr. Reed, nor was he obligated in any manner to make himself aware of such salary and is unaware of what Mr. Reed was receiving or should have been receiving, other than as is alleged in Plaintiff's Complaint."

This affidavit was not controverted by Nielson. This count was evidentially presented in the complaint to show liability against Reed because it is not even alleged that Savoy had any control over the managing of the corporation.

Judgment affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and HAYS, JJ., concur.