495 P.2d 877

**WORLD INVESTMENTS, INC., an Arizona corporation, Appellant,**

**v.**

**ESTATE of J. N. HARBER, Deceased, by and through Irene Harber Foley, Administratrix with the Will Annexed, et al., Appellees.**

**No. I CA–CIV 1601.**

Court of Appeals of Arizona,
Division 1,
Department A.

April 18, 1972.

Rehearing Denied May 24, 1972.

Review Denied July 13, 1972.

**108**

Cox & Hedberg by James J. Cox, Jr., Phoenix, for appellant.

Harold R. Scoville, and Roush, Mori, Feinstein & Welch by George Welch, Jr., Phoenix, for appellees Estates of J. N. Harber and Mary Harber.

Evans, Kitchel & Jenckes by Burton M. Apker, Phoenix, for appellee Transamerica Title Ins. Co. of Ariz.

CASE, Judge.

On or about 8 March 1962, J. N. Harber, as first beneficiary, and Luke Land and Development Co., as second beneficiary, entered into what is commonly called a subdivision trust. This trust provided that Luke would purchase 2,315 acres of land from Harber for $1,000,000.00 under an agreement providing for a down payment of $100,000.00 and annual installments of $90,000.00 or more, with five percent interest. Luke was given the right to subdivide the land and secure releases of parcels from the trustee upon payment of scheduled sums. In addition, the agreement provided that Luke, at its option, could sell the trust property or a portion thereof pursuant to a "Jr. Lien Trust Agreement."

On 27 December 1963, Luke entered into a junior trust agreement whereby Luke was the first beneficiary and World Investments, Inc. the second beneficiary. This agreement provided that World Investments would purchase 660 acres of the 2,315 acres originally included in the senior trust. The junior trust provided for a down payment, which was made, and for annual installments none of which were paid.

On 6 May 1964, the co-executors of the Estate of J. N. Harber filed a complaint against World Investments, Inc., Luke Land and Development Co., Inc., Phoenix Title and Trust Co., M. E. and E. Penny Grimes, Harold Peterson and Joan Demand alleging in count one that Luke defaulted on the senior trust by failing to pay the installment due 31 December 1963; that Luke on 27 December 1963, prior to default, sold a portion of the land to World Investments, Inc.; that World Investments thereafter, also prior to default, sold to the Grimes and Harold Peterson a portion of the property; that the transaction between Luke and World Investments was fraudulent and praying that the transaction, i. e., the junior trust agreement, between Luke and World Investments, as well as the purported sale from World Investments to the Grimes and Peterson, be set aside. Count two of the complaint alleged that Harber was fraudulently induced to include certain land in the senior trust agreement for which he received no consideration and which he never intended to include in the sale. Damages of $20,000.00 were sought from Luke and Joan Demand who allegedly made the false representations. On 8 May 1964, a lis pendens was filed naming the four parcels involved in the litigation. On 6 October 1967, judgment was entered for World Investments, the Grimes, Peterson and Demand on the Harber Estate's complaint and the lis pendens was ordered discharged.

Thereafter, on 8 May 1968, World Investments, Inc., hereinafter referred to as plaintiff, instituted the instant action against the co-executors of the Estate of J. N. Harber, the Estate of Mary Harber, and Transamerica Title, hereinafter referred to as defendants. Their amended complaint set forth the foregoing facts and additionally alleged that at the termination of the prior lawsuit World Investments sought reinstatement of its contract and to be relieved of defaults which occurred during the pendency of the prior action which the Estate of J. N. Harber had refused. World prayed that the con-

tract be declared valid and enforceable, alleging that the Estate of J. N. Harber repudiated the contract without justification causing World to be deprived of the entire beneficial use of the property; that all obligations abate from and after 6 May 1964 until the outcome of the instant litigation and that defendants be compelled to specifically perform the contract.

On 3 April 1970, defendants Harber Estates filed a Motion for Summary Judgment contending:

1) That inasmuch as the junior trust was subordinate to and dependent upon the senior trust which had been previously forfeited out and terminated the junior trust was also terminated thereby extinguishing plaintiff's rights thereunder;

2) That plaintiff failed to make or tender payments due under the junior trust after December, 1967, when the prior legal action terminated;

3) That plaintiff's rights in the junior trust were forfeited out as of 1 September 1969 according to the terms of the trust. The trial court granted Harber Estates' motion, though not specifying the particular grounds upon which the motion was based.

■ On reviewing a judgment granting a motion for summary judgment, the Court must view the evidence in a light most favorable to the party who opposed the motion, Hensley v. Town of Peoria, 14 Ariz.App. 581, 485 P.2d 570 (1971), and must affirm if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Rule 56(c), Ariz.R.Civ.P., 16 A.R. S.; Nielson v. Savoy, 105 Ariz. 325, 464 P.2d 608 (1970).

If any of the above three grounds raised by the defendants in the trial court justify summary judgment, the judgment must be affirmed.

■ We will first discuss defendants' contention that the default and forfeiture of the senior trust terminated the junior trust. World contends that this issue was previously decided in its favor in the action brought by the Estate of J. N. Harber against Luke Land and Development Company, World Investments, the Grimes, Peterson and Demand. No doubt the initial action is conclusive, absent fraud or collusion, as to every point decided therein as well as every point raised in the record which could have been decided. Day v. Wiswall's Estate, 93 Ariz. 400, 381 P.2d 217 (1963). Count one of the initial action, while setting forth the facts of the forfeiture of the senior trust, sought to set aside the junior trust as being "fraudulent, and not bona fide, and was a scheme and conspiracy to remove from the security of Trust No. 4304 the property described in 'Exhibit F', knowing full well that Luke Land and Development Company, Inc. was not and would not be financially able to meet the obligation of the principal installment due on December 31, 1963. . . ." The Harber Estate also sought to have the sale of certain property under the junior trust made on 27 December 1963 set aside on the basis that the junior trust was invalid from its inception and the sale to the Grimes and Peterson consummated after the inception of the junior trust was also invalid. Any attempt by the Harber Estate to declare the junior trust terminated after the forfeiture, if successful, would not have nullified or invalidated the sale to the Grimes and Peterson, the obvious motivating purpose of the lawsuit. We have been cited to nothing in the record of the initial action, except the facts of the forfeiture of the senior trust as set out in the initial complaint, suggesting that the trial court therein determined, was asked to determine or could have determined whether the junior trust was forfeited ipso facto at the forfeiture of the senior trust. Thus, the principles of res judicata would not bar the trial court in the instant litigation from determining this question.

The terms of the junior trust specifically provide that:

"All rights of the Beneficiaries hereunder are junior and subordinate to every

# 110

applicable provision of said Senior Trust, insofar as they relate to property then held in said Senior Trust, and can be exercised only to the extent consistent with said Senior Trust. . . . "

The terms of the junior trust also provide:

"WHEREAS, Trustee holds title, as Trustee of its trust designated above as the Senior Trust, to the real property described in that certain memorandum title report a copy of which is immediately hereinafter set forth as Page 2 of this agreement, said property being subject to the matters shown thereon; and

"WHEREAS, Trustee shall hold in trust, under the terms of this agreement, the Second Beneficial Interest in said Senior Trust insofar as it relates to said property and *shall hold in trust,* under the terms of this agreement, *title to any of said property which may from time to time be released from said Senior Trust.* . . . " (emphasis added)

This language is clear and unambiguous and since bargained for at arm's length by the parties effect must be given thereto. The trustee in the junior trust held the second beneficial interest in the senior trust as it relates to the property described and also title to the property described as it was released from the senior trust. Thus, the trustee under the junior trust would hold no title to property other than to property previously released from the senior trust at the time the second beneficiary of the senior trust was forfeited out.

The record reflects that on 20 April 1964, prior to the initiation of the initial action between the Harber Estate and Luke, the senior trust was forfeited out according to its terms. This forfeiture effectively withdrew from the junior trust all rights of plaintiff which were derived from the senior trust except those which relate to parcels for which the release price had been previously paid.

Judgment affirmed.

STEVENS and DONOFRIO, JJ., concur.