570 P.2d 1246

Champion A. BROWNE, husband of Inez
Browne, and the Unknown Heirs of
Said Party, if Deceased, Appellants,

v.

Lester A. NOWLIN and Hazel I. Nowlin,
husband and wife, Appellees.

No. 12690.

Supreme Court of Arizona,
In Banc.

Oct. 7, 1977.

John S. Schaper, Phoenix, for appellants.

Abbott H. Goldenkoff, Edward W. Stroetz, Jr., by Edward W. Stroetz, Jr., Phoenix, for appellees.

GORDON, Justice:

This appeal stems from a loan made by Lester and Hazel Nowlin (hereinafter appellees) to Champion A. Browne in exchange for his promissory note of $2,781.00, payable monthly at "the main office of Title Insurance Company of Minnesota", (hereinafter Minnesota Title). To accomplish payment of the note, which was secured by a real estate mortgage, appellant assigned a collection account at Minnesota Title to appellees. Following a sporadic series of payments, the Nowlins instituted a suit to accelerate the debt and foreclose on the mortgage, alleging the monthly payments and real estate taxes to be in arrears. Subsequently, their motion for partial summary judgment was granted on these issues and was followed by a trial which determined the amount of the attorney fees. Following the denial of his motion for new trial, Mr. Browne appealed these decisions. We take jurisdiction of this appeal pursuant to 17A A.R.S. Supreme Court Rules, Rule 47(e).

Three issues have been raised: (1) Whether the note was subject to acceleration for default in the payment of principal and interest or real estate taxes; (2) If acceleration was proper, whether appellees waived their right to foreclose; and (3) Whether the loan was usurious.

When reviewing a summary judgment, this Court will examine the record in the light most favorable to the party opposing the motion. *Arizona Coffee Shops Inc. v. Phoenix Downtown Parking Association*, 95 Ariz. 98, 387 P.2d 801 (1963). This court will affirm the granting of summary judgment only if the record discloses no genuine issue of material fact and the judgment was proper as a matter of law. *Nielson v. Savoy*, 105 Ariz. 325, 464 P.2d 608 (1970).

## ACCELERATION OF THE NOTE

The relevant section of the note provided:

"Should default be made in the payment of any installment when due, then the whole sum of principal and interest shall become immediately due and payable at the option of the holder of this note * * *. This option shall not be deemed waived as to future installment payments should holder of this note at any time accept payment of any installment after it became due."

Generally, acceleration clauses are viewed as protective devices for the security of the lender. This clause, not being self-executing, is merely exercisable at the lender's option. As a result, a lender may waive this right by accepting the sums which are in default, prior to the note being accelerated. *See Bisno v. Sax*, 175 Cal.App.2d 714, 346 P.2d 814 (1959).

▌ Although the record reflects an irregular schedule of payments, it appears the payments were fortuitously current two days before the filing of the foreclosure. On December 4, 1973 a net payment of $312.32 was made, curing the arrearage of three installments. Appellees, apparently unaware of this payment to Minnesota Title, initiated the foreclosure proceedings on December 6. In an attempt to avoid this determinative fact, appellee contends the payment, although made, was not credited to their account until after the institution of the suit; therefore, it is argued, appellant was still in default. We find no merit to this proposition. The note required the payments to be made at Minnesota Title. If Minnesota Title was not, as is proposed, the Nowlin's collection agent, their acceptance of payments through Minnesota Title, over a period of time, created an implied agency. Additionally, by keeping the December payment, the Nowlin's ratified the acts of Minnesota Title, losing any right to deny the agency. *See Holsclaw v. Catalina Savings & Loan Association*, 13 Ariz.App. 362, 476 P.2d 883 (1970); *cf. Kendall v. State*, 38 Ariz. 314, 299 P. 1029 (1931). The delay, if any, in posting the account is attributable to Minnesota Title and we feel it would be inequitable to penalize appellant for the actions of another which were beyond its control. If appellees had wished to avoid this turn of events, they could have required a different manner of payment.

▌ The note called for 36 monthly payments, yet, no payment was made in a total of seven of the months preceding this action. These delinquent amounts were usually cured by double payments in the following months. From this, appellee advances a novel argument:

"The note is clear on its face, each month a payment must be made for said amount or more, regardless of the amount tendered and accepted the preceding month. By not complying with the terms of the note, it was clearly and unequivocally in default."

If this theory were accepted, any excess in a monthly payment would simply be forfeited, and the total amount due on the note would be meaningless—except as a minimum amount. Since there is no evidence in the record of any payment being refused, we must presume all were accepted. Acceptance of a delinquent payment, prior to acceleration, cures the default and constitutes a waiver of the right to accelerate. *Bisno v. Sax*, supra; *See Pima Farms Co. v. Fowler*, 32 Ariz. 331, 258 P. 256 (1927). Appellees' waiver of the default in payment of principal and interest did not constitute a waiver of their rights arising from a tax delinquency due to appellant's failure to pay real estate taxes in 1972 and 1973. *Holman v. Roberts*, 35 Ariz. 110, 274 P. 775 (1929). The mortgage unlike the note, provided for acceleration of the debt upon the mortgagor's failure to pay real estate taxes. This condition of the mortgage is enforceable, even though the note lacked a similar provision, because the terms of a jointly executed note and mortgage must be construed together. *Farmers and Merchants Bank v. Copple*, 190 Kan. 170, 373 P.2d 219 (1962).

▌ At the time the suit was filed, taxes on the property were delinquent for 1972 and 1973. Appellant's response to the motion for summary judgment states:

"Finally, the defendant concedes that taxes upon the real property referred to

in the mortgage are delinquent, and that the mortgage allows foreclosure in the event of such a delinquency. * * * The defendant will further not oppose the foreclosure of the mortgage * * * in order to enforce the security for the payment of taxes * * *."

Motion for summary judgment was accordingly granted. Sometime thereafter; appellee was repaid the amount of the taxes, however, we feel this came entirely too late in the proceedings. Equity, it is said, aids the vigilant * * *; the summary judgment was, therefore, appropriate. We turn then to the question of usury.

## USURY

Appellant has questioned whether the loan has been rendered usurious by certain expenses which he incurred with the loan. The answer to this question turns on the interpretation of A.R.S. § 44–1205 [1] which states, in part:

"A. It is lawful to make installment loans of the following classes.

"1. In a principal amount not to exceed five thousand dollars if the total payment for interest or discount is not in excess of eight dollars per one hundred dollars per year on the first one thousand dollars and six dollars per one hundred dollars per year on the amount of the loan in excess of one thousand dollars, in each event to be calculated from the date of the indebtedness to the date the last installment becomes due, to be added to the principal amount of the loan * *.

"B. The lender shall not charge or *receive* any sum in addition to the interest, discount or finance charge authorized by subsection A for preparing a loan application, for investigating the credit of an applicant or his guarantor, * * * or otherwise for services, *expenses, brokerage* or fines * * * except the lawful fees actually and necessarily paid out by the lender to a public officer for filing or recording in a public office, for ac-

knowledging the instrument securing the loan, and for costs of obtaining a preliminary title report or title insurance policy. If greater aggregate charges are collected or received on a loan than the maximum charges authorized by this section the loan shall be usurious." (Emphasis supplied.)

The amount of the note was $2,781.00 which appellee accounts for as follows:

| | | |
|---|---|---|
| Amount borrowed | | $2,305.94 |
| Interest charged as follows: | | |
| $1,000 × 8% (per annum) × 3 (yrs) = | $240.00 | |
| $1,305.94 × 6% (per annum) × 3 (yrs) = | 235.06 | |
| Total Interest Charged | | 475.06 |
| Amount of Note with pre-computed or add-on interest included; | | $2,781.00 |
| The said amount payable in 36 equal monthly installments of $77.25; $77.25 × 36 = | | $2,781.00 |

The escrow agreement further delineates the "amount borrowed":

| | | |
|---|---|---|
| Amount Received by Mortgagor | | $2,041.89 |
| Expenses paid by Mortgagor | | |
| Escrow Fee | $ 48.00 | |
| Title Insurance | 50.00 | |
| Recording Fee | 2.00 | |
| Lawyer Fee re: instruments paid to A. Goldenkoff | 25.00 | |
| Brokerage Fee to Fred Warren | 139.05 | |
| | | 264.05 |
| | | $2,305.94 |

■ The costs of the title insurance and the recording fee may validly be passed on to the borrower. A.R.S. § 44–1205(B). Thus, the only question revolves about the brokerage, attorney's and escrow fees. A.R.S. § 44–1205 in specifying the permissible charges, merely codifies the general principle that:

"A lender, in addition to the highest rate of interest, may * * * require reimbursement of expenses incurred, such as the examination of title, [and] recordation of papers * * *. But such charges must be limited to * * * expenses incurred, and may not be made a

---

1. The contract was formed under the provisions of A.R.S. § 6–254, which was combined with A.R.S. § 6–255 and incorporated into A.R.S. § 44–1205 in 1973.

device through which additional interest or profit on the loan may be exacted. * * * Nor may a lender charge to a borrower the ordinary overhead expenses of his business." *Grady v. Price*, 94 Ariz. 252, 256–257, 383 P.2d 173, 176 (1963). Appellee contends the brokerage, attorneys, and escrow fees are expenses which a borrower must incur in order to obtain the loan, rather than being unjustified charges by the lender to the borrower. In determining the true substance of these charges, we will look past the form of the transaction. *Modern Pioneers Insurance Company v. Nandin*, 103 Ariz. 125, 437 P.2d 658 (1968); *Seargeant v. Smith*, 63 Ariz. 466, 163 P.2d 680 (1945).

The broker for this transaction, Fred Warren, submitted an affidavit in support of appellee's motion for summary judgment stating:

> "1. I am familiar with the note and mortgage herein and the transaction giving rise thereto and the record of payments on account thereof. I was instrumental in creating this note and mortgage and its terms on behalf of the [appellees] acting as the broker in the transaction."

> *  *  *  *  *  *

This being the only evidence in the record concerning Mr. Warren, we are unable to reach any reasonable conclusion except that he was appellee's, the lender's broker. The amount of the loan which corresponds to his fee, therefore, violates the provisions of A.R.S. § 44–1205(B). It does not make any difference that appellees utilized the facade of an escrow agreement to disburse funds to their broker, while binding the appellant for the brokerage cost.

The payment of the "Lawyer's fee re: instruments" to Mr. Goldenkoff from the amount in escrow is also questionable. The only instruments which appear in the record are a form mortgage (furnished through the courtesy of Transamerica Title Ins. Co.), the promissory note, the federally required disclosure statement accompanying the note, and the escrow documents of Minnesota Title, all with the applicable blanks filled. Viewing this evidence favorably to the appellant, the payment to Mr. Goldenkoff can only be considered an attempt to defray appellee's business expenses—a practice prohibited by A.R.S. § 44–1205. A lender simply may not charge the maximum allowable rate of interest, and also pass on his overhead to the borrower.

The record does not support appellee's argument that the brokerage and attorney's fees were appellant's separate expenses which incidently were paid out of the loan. To accept this theory, would be a triumph of form over substance. We do not discern any difference between this transaction utilizing the escrow agent as camouflage and a transaction where a lender directly pays his own attorney and brokerage fees. In both instances, the borrower would receive $2,041.89 while being obligated to the lender for $2,305.94. A.R.S. § 44–1205 states, unequivocally, "The lender shall not receive any sum for expenses or brokerage fees". This may not be circumvented through the utilization of an escrow.

In accord with the foregoing, we need only point out that the escrow fee is not one of the expenses permissible under A.R.S. § 44–1205. Although this may be a valid expense to be shared by both parties, we are constrained by the language of the statute. Consequently, appellee may not receive any amount for this expense.

There remains the question of whether the amounts which are permissible under A.R.S. § 44–1205(B) are to be combined with the principal amount the borrower receives, in order to calculate the interest provided for in subsection A of the statute. We hold they may not.

In order to arrive at a proper interpretation we will view the statute in its entirety, giving due consideration to the title. *Police Pension Board of City of Phoenix v. Warren*, 97 Ariz. 180, 398 P.2d 892 (1965). A.R.S. § 44–1205 is entitled "Installment loans; additional charges," which corresponds to the contents of subsections A and B. Subsection A concerns the principal amount of the loan and interest allowable

on the principal, which is commonly defined as "the capital sum of a debt or obligation, as distinguished from interest or other additions to it." Blacks Law Dictionary, 1355, 1356 (4th ed. 1951). This appears to be congruent with the distinction made in the title and which exists between the two subsections. Subsection B, in conformance with this distinction, specifies the costs which may be received by the lender in addition to the principal and interest authorized in subsection A. However subsection B does not provide for an accrual of interest on these charges. The addition of interest would increase their amount beyond the sums actually expended by the lender, a violation of the last sentence of subsection B, which states:

"If greater aggregate charges are collected or received on a loan than the maximum charges authorized by this section the loan shall be usurious."

To interpret the statute in a manner allowing interest on the additional charges would render this sentence void, or insignificant at best. This we will not do. *State v. Superior Court for Maricopa County*, 113 Ariz. 248, 550 P.2d 626 (1976). This interpretation of A.R.S. § 44–1205 fits the general purpose of usury statutes—to limit the permissible interest rates. Thus, absent express authorization by the Legislature, the expenses itemized in subsection B, if charged to the borrower, are to be non-interest bearing.

In attempting to pass on the unauthorized charges discussed above and by charging interest on the authorized charges, appellees have rendered the loan usurious, A.R.S. § 44–1205(B), thereby divesting themselves of the saving effect of the installment loan provisions. Absent this protection, the loan, which bears an actual interest rate of 12.60 per annum on the total amount borrowed is subject to the general usury statutes. *See* A.R.S. § 44–1202 et seq.

■ Finally, appellant asserts his payment of an installment prior to the disbursement of the loan, also rendered the loan, *ipso facto*, usurious. The note required the initial payment be made on August 20, 1972, one month after the actual disbursement of the principal. However, appellant, in assigning his collection account, directed the payments to be transferred as of June 1, 1972. Since there has been no allegation of duress, we assume the assignment was a voluntary action by Mr. Browne. Hence, the early payment on July 11 was of his own making, and he may not complain about the attendant consequences. *See Small v. Ellis*, 90 Ariz. 194, 367 P.2d 234 (1961). Nothing within A.R.S. § 44–1205 prohibits advance payments, although it does authorize a rebate of interest if the entire loan is repaid early. Admittedly, the practice of payment prior to disbursement of the principal is unusual, however, we do not believe, under the facts of this case, that appellant's actions of themselves rendered the loan usurious. *See Altherr v. Wilshire Mortgage Corp.*, 104 Ariz. 59, 448 P.2d 859 (1968).

■ Lenders who wish to utilize the favorable interest rates permitted by A.R.S. § 44–1205 must comply with the limitations on additional charges which may be exacted from the borrower. This statute, as do most laws, attempts to strike a balance between two divergent interests of our society. Although it may not seem ideal to all, the statute is the pronouncement of the Legislature whose job it is to reflect these varying interests in its promulgations. Our duty, on the other hand, is to effect the Legislature's intention without upsetting the balance which has been struck. For these reasons, we do not attempt to insert our own views, but rather strive to reach the proper interpretation of a statute. Thus, lacking a contrary indication from the Legislature, we have interpreted A.R.S. § 44–1205 rather strictly, limiting the additional charges to those clearly set forth in the statute. Similarly we were unable to permit the accrual of interest on these additional charges.

The judgment of the Superior Court is affirmed, except for the amount determined to be due on the note. We remand for a determination of the correct amount

due in accordance with this opinion and A.R.S. § 44–1202 et seq.

HAYS and HOLOHAN, JJ., concur.

CAMERON, C. J., and STRUCKMEYER, V. C. J., did not participate in the determination of this matter.