NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

NATIONAL COLLEGIATE STUDENT LOAN 2006-3, *Plaintiff/Appellee*,

*v.*

DUSTIN MILIC, et al., *Defendants/Appellants*.

No. 1 CA-CV 18-0705
FILED 10-22-2019

---

Appeal from the Superior Court in Maricopa County
No. CV2015-053352
The Honorable Bruce R. Cohen, Judge

**AFFIRMED IN PART; REVERSED IN PART; REMANDED**

---

COUNSEL

Gurstel Law Firm PC, Scottsdale
By Jesse H. Walker, Brad J. Clark, Shannon N. Crane, Kerry A. Markert,
Jesse Vassallo Lopez, Dwayne D. Burns, Brennan S. Murray, Michael S.
Hartsock
*Counsel for Plaintiff/Appellee*

Arizona Consumer Law Group, PLC, Mesa
By John N. Skiba
*Counsel for Defendants/Appellants*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Michael J. Brown joined.

---

**W I N T H R O P**, Judge:

**¶1** Appellant Dustin Milic appeals the superior court judgment entered in favor of The National Collegiate Student Loan 2006-3 ("National Collegiate") in a default action against Milic and his sister, Destiny Milic (collectively, "Milic"). For the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings consistent with this decision.

### FACTS AND PROCEDURAL HISTORY

**¶2** In June 2006, Dustin Milic borrowed $27,838 from JPMorgan Chase Bank as a student loan; an origination fee of $2,585.86 brought the total principal of the loan to $30,421.86. His sister, Destiny Milic, co-signed the loan. Bank One and JPMorgan Chase Bank merged, and Bank One became the successor lender.

**¶3** In September 2006, the Milic loan was packaged with thousands of other loans as part of a portfolio sold to the National Collegiate Funding LLC, which then transferred the Milic loan to National Collegiate. American Education Services ("AES") managed the loan as National Collegiate's pre-default servicer.

**¶4** The first of 240 installment payments became due in July 2008. Milic failed to make several installment payments, and AES "charged off"[1] the loan on January 3, 2012. At that time, Transworld Systems, Inc. ("TSI") began managing the loan as the default servicer for National Collegiate.

**¶5** National Collegiate filed suit on September 18, 2015, seeking judgment for $43,780.57, the outstanding balance of the loan; $5,672.76 in interest accrued between the charge off on January 3, 2012 and March 6, 2014; unspecified interest accrued after March 2014; and costs. In April

---

[1] To "charge off" is to "treat (an account receivable) as a loss or expense because payment is unlikely." *Charge Off*, Black's Law Dictionary (11th ed. 2019).

2017, an arbitrator found in favor of National Collegiate for the entire amount. Milic moved to vacate the judgment on procedural grounds, and the court granted the unopposed motion, allowing Milic to timely appeal the arbitration award and request a trial *de novo* in superior court.

¶6            The superior court heard the matter in a bench trial on July 30, 2018. The only witness, TSI employee James Cummins, testified regarding National Collegiate's records as produced and maintained by AES and TSI. Cummins testified that AES and TSI operate as loan servicers for National Collegiate and that TSI is "the dedicated custodian of records" for National Collegiate. National Collegiate introduced records of the Milic loan through Cummins' testimony, and the court admitted the exhibits over Milic's objections.

¶7            Following the bench trial, the court found that Milic breached the contract and entered judgment in favor of National Collegiate as the successor in interest for the principal balance of the loan plus accrued interest and costs. Milic timely appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## ANALYSIS

### I.      Business Records Exception

¶8            Milic argues that the superior court erred by admitting National Collegiate's exhibits under the business records exception to the general prohibition against hearsay evidence. Milic contends that the exhibits, which show the repayment history and loan balance, do not fall within the business records exception because National Collegiate failed to lay a sufficient foundation for admission of the records and because the records were not business records per se, but rather created for the purposes of litigation. We review the superior court's evidentiary ruling for abuse of discretion. *Sitton v. Deutsche Bank Nat. Trust Co.*, 233 Ariz. 215, 220, ¶ 23 (App. 2013).

¶9            Under the business records exception, a record of a regularly conducted activity is admissible as an exception to hearsay if (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) it was kept in the course of regularly conducted business; (C) it was made as a regular practice of business; (D) a qualified witness testifies as to the qualifying criteria; and (E) the opponent fails to show the record lacks trustworthiness. Ariz. R. Evid. ("Rule") 803(6). A court may find records prepared by a third party to be trustworthy business records if the entity relies on the third-party prepared

records "as part of their ordinary course of business." *State v. Parker*, 231 Ariz. 391, 402, ¶ 33 (2013).

**¶10**      First, Milic argues that Cummins' testimony failed to lay an adequate foundation to support the trustworthiness of three documents detailing the account activity and outstanding balance of the loan. Specifically, Milic challenges the admission of Exhibit 6, which documents the loan financial activity from disbursement through the date it was charged off; Exhibit 7, which details requested deferments or forbearances on the loan; and Exhibit 8, which documents the repayment schedule. AES created and maintained records of the loan while AES managed the loan for National Collegiate. Once AES "charged off" the loan after a period of non-payment, TSI took over management of the loan as National Collegiate's "default servicer." Milic contends that because Cummins testified that he accessed records through an AES system, neither Cummins' employer TSI nor National Collegiate had incorporated the documents into their respective business records.

**¶11**      Milic's argument, however, ignores the roles that AES and TSI play compiling and maintaining National Collegiate's records; National Collegiate naturally relies on its own records and may move its own records into evidence, either by stipulation or following the testimony of its custodian as provided in Rule 803(6)(D). Cummins testified as a custodian of National Collegiate's records in his position as a TSI employee. He testified about his familiarity with National Collegiate's records as produced and maintained by AES and TSI on National Collegiate's behalf, described National Collegiate's relationship with its records custodians, and explained how TSI uses AES documents in servicing National Collegiate's loans in default. In establishing how National Collegiate—through TSI—relies on the AES documents, Cummins' testimony offered a reasonable basis for the court to conclude the records were admissible. *See State v. Griffith*, 1 CA-CR 18-0040, 2019 WL 3789230, at *3, ¶ 10 (Ariz. App. Aug. 13, 2019) (mem. decision) ("[G]enerally no reason exists to question the trustworthiness and reliability of a statement relied on by a business because businesses normally require authentic, truthful statements to function.").

**¶12**      Second, Milic contends that TSI produced the AES records solely to prepare for the instant litigation. Documents prepared solely for litigation generally do not fall within the business records exception, but a reproduction of a regularly kept record—even if produced for litigation— may qualify as a business record. *Parker*, 231 Ariz. at 401, ¶ 30. Here, Cummins testified that he logged into the AES database to retrieve the pre-

existing records, which TSI employees can access but cannot alter. Cummins also testified that he regularly accesses the records to prepare for arbitration or a trial and that he also accesses and produces the records when borrowers "ask for their loan history." The physical print-outs reflect December 6, 2016 as the date Cummins accessed and printed the records from the AES database. Milic contends this date instead signals the date the documents were created; this assertion, however, is not supported by the evidence. Cummins testified that the subject information was recorded and the underlying business documents prepared by AES—on behalf of National Collegiate—in the ordinary course of business prior to any litigation. *See* Jack B. Weinstein & Margaret A. Berger, Federal Evidence § 901.08[2], at 901-84 (Joseph M. McLaughlin ed., rev. 2012) ("[P]rintouts prepared specifically for litigation from databases that were compiled in the ordinary course of business are admissible as business records to the same extent as if the printouts were, themselves, prepared in the ordinary course of business."), *cited with approval in Parker*, 231 Ariz. at 401, ¶ 30; *see also* Fed. R. Evid. 1006 ("The proponent may use a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court."). Accordingly, we find no abuse of discretion in the admission of Exhibits 6, 7, or 8.

## II. *Statute of Limitations*

**¶13**        Milic also argues that the superior court erred in finding that the October 2010 partial payment extended the statute of limitations on installment payments that accrued prior to September 18, 2009. The accrual of the cause of action and the interpretation of a statute of limitations are legal questions that we review *de novo*. *See Larue v. Brown*, 235 Ariz. 440, 443, ¶ 14 (App. 2014).

**¶14**        Milic's promissory note is a contract in writing subject to the six-year statute of limitations in A.R.S. § 12-548. When a fixed debt is payable in installments, the statute of limitations applies to each installment separately unless the parties have agreed otherwise. *Navy Fed. Credit Union v. Jones*, 187 Ariz. 493, 495 (App. 1996). If a debtor fails to make an installment payment, the creditor then has the right to sue for that missed payment, triggering the statute of limitations for that installment. *See Johnson v. Johnson*, 195 Ariz. 389, 391, ¶ 11 (App. 1999). If the contract has an optional acceleration clause, the creditor may exercise the clause to accelerate the balance of the loan and trigger a cause of action for all future installments. *See Navy Fed. Credit Union*, 187 Ariz. at 495. An acceleration clause, however, "is of no moment to the accrual of a cause of action for a

*defaulted* installment." *Id.* (quoting 54 C.J.S. Limitations of Actions § 153 (1987)).

**¶15**      The statute of limitations issue in this case hinges on a single payment of $298.18 made by Milic in October 2010. The loan agreement set monthly installments of $383.44; the first installment became due in July 2008. National Collegiate filed suit on September 18, 2015, accelerating the debt owed for the future installments. The parties do not dispute that installment payments that accrued after September 18, 2009 fall within the six-year statute of limitations. Rather, the parties dispute whether Milic's partial installment payment in October 2010 reset the limitations for the installments due prior to September 18, 2009.

**¶16**      The superior court found that the statute of limitations would time-bar the "installments due from July, 2008 through August, 2009, together with interest that accruing thereon." The court continued, however, noting it "cannot ignore the installment payment made by Plaintiff in October 2010, in the sum of $298.18. The court concludes that this payment triggers a new clock for the statute of limitations, extending the statute of limitations to October, 2016." This finding swept the otherwise-barred installments within the statute of limitations, and the court found National Collegiate's suit timely as to all installments dating to July 2008. In light of precedential case law, we disagree.

**¶17**      Milic relies on *Mertola, LLC v. Santos*, 244 Ariz. 488 (2018), in which our Supreme Court held that a cause of action to collect the entire outstanding debt in a credit card contract accrues on default. Specifically, Milic cites the court's statement that "[p]artial repayment . . . does not cure the default or reset the limitations period" when a debtor has defaulted on a payment. *Id.* at 492, ¶ 21. National Collegiate contends that *Mertola* applies only to credit card debt and cites the court's apparent distinction between credit card debt and installment contracts. *See id.* at 491, ¶ 16. The court, however, made the distinction in determining how an acceleration clause affects a cause of action for the entire outstanding debt. *Id.* at 492, ¶ 21. The distinction is inapposite to the issue here: whether a partial payment resets the statute of limitations for installments that would otherwise be time-barred.

**¶18**      The language in *Mertola* on which Milic relies does not appear to be limited to credit card debt:

> But, as we held in *Browne*, a debtor may cure a default if the
> creditor accepts a payment of arrearages that brings the

> account current consistent with the parties' contract. By allowing the debtor to cure the default, the creditor relinquishes its pending cause of action to collect the debt, and the statute of limitations commences only upon a new default. Partial repayment, however, does not cure the default or reset the limitations period.

*Id.* at 492, ¶ 21 (citing *Browne v. Nowlin*, 117 Ariz. 73, 75 (1977)) (citations omitted). Notably, the *Browne* decision involved a disputed default in an installment contract—not credit card debt. *Browne*, 117 Ariz. at 74-75. The court in *Mertola* expressly declined to extend its decision to other debts such as installment payments. *Mertola*, 244 Ariz. at 492. But we find no reason— and National Collegiate offers no persuasive reason—to distinguish between credit card debt and installment payments in evaluating a partial payment's effect on the statute of limitations under A.R.S. § 12-548.

**¶19** The partial payment language in *Mertola* echoes this court's finding in *Cheatham v. Sahuaro Collection Serv., Inc.*, 118 Ariz. 452 (App. 1978). In *Cheatham*, this court examined facts similar to those before us: The debtor executed a promissory note requiring payments in two installments, then failed to pay either installment due in 1965. *Id.* at 453. Beginning in 1968, the debtor made sporadic partial payments over five years, but the creditor failed to file suit until 1975. *Id.* This court held that the cause of action accrued upon the missed installments in 1965, that the creditor's action fell outside the six-year statute of limitations, and that "under Arizona law part payment does not, in itself, avoid the bar of A.R.S. § 12-548." *Id.* at 454. The *Cheatham* court looked to A.R.S. § 12-508 and found that to lift the time bar on a claim under the statute, the debtor must make an "acknowledgement . . . in writing and signed by the party to be charged." *Id.* at 454 (quoting A.R.S. § 12-508). Thus, the court held that a partial payment alone did not satisfy § 12-508. *Id.* at 454-55.

**¶20** Here, the statute of limitations began to run on each installment when Milic failed to make a payment under the terms of the loan agreement. The October 2010 partial payment did not toll or otherwise affect the statute of limitations as to the prior unpaid installments. *See Cheatham*, 118 Ariz. at 454; *see also Mertola*, 244 Ariz. at 492, ¶ 21. Likewise, National Collegiate's suit accelerating the future installments did not affect the statute of limitations applicable to the prior delinquent installments. *Navy Fed. Credit Union*, 187 Ariz. at 495.

**¶21** National Collegiate's suit was timely as to the unpaid installments due between September 2009 and September 2015. We

conclude, however, the statute of limitations bars National Collegiate's action on the unpaid installments due before September 2009, and we find the superior court erred in finding that, in the absence of a written acknowledgement by Milic, the October 2010 payment lifted the time bar as to those installments. Accordingly, we reverse the court's order finding the statute of limitations restarted as to installments due prior to September 18, 2009.

**¶22** The court's order does not delineate the amount in principal and interest that should be attributed to the time-barred installment payments. We therefore remand the matter to the superior court for that determination.

### III. Attorneys' Fees on Appeal

**¶23** Both parties request an award of attorneys' fees and costs expended on this appeal. Neither party is entirely successful in this appeal, and we deny fees to both parties. Because Milic has succeeded, however, in reducing the amount of the judgment, we award the appellants their taxable costs on appeal upon compliance with ARCAP 21. *See* A.R.S. § 12-342(A).

### CONCLUSION

**¶24** For the foregoing reasons, we affirm the admission of Exhibits 6, 7, and 8; reverse the finding that the October 2010 partial payment restarted the statute of limitations for installments due prior to September 18, 2009; remand for the superior court to recalculate and enter an amended judgment in favor of National Collegiate consistent with this decision; and award taxable costs to the appellants.



AMY M. WOOD • Clerk of the Court
FILED: AA