775 P.2d 1088

**David Florica VONK and Romaine M. Vonk, husband and wife, Plaintiffs–Appellees,**

v.

**Jess A. DUNN, Juanita R. Dunn, and Frank M. Dunn, Defendants–Appellants.**

No. CV–88–0405–PR.

Supreme Court of Arizona, En Banc.

June 15, 1989.

David P. Flannigan, Bisbee, for plaintiffs-appellees.

Jess A. Dunn, Juanita R. Dunn and Frank M. Dunn, Tucson, pro se.

FELDMAN, Vice Chief Justice.

The Vonks brought this action to foreclose a mortgage that the Dunns had given to secure the purchase of land. The trial court granted summary judgment for the Vonks and the court of appeals affirmed. *Vonk v. Dunn*, 159 Ariz. 134, 765 P.2d 536 (Ct.App.1988). We granted the Dunns' petition for review to determine whether equitable considerations apply to acceleration clauses and, if so, whether a factual issue concerning unconscionability precluded summary judgment foreclosing the mortgage. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## FACTS

The Dunns bought 160 acres in Cochise County from the Vonks in 1982 for $28,000. The Dunns paid $4,000 down and signed a promissory note for the $24,000 balance, securing the note with a mortgage on the property. The note ran at eight percent per annum and was payable in regular monthly installments on the first of each month. The note contained a ten-day grace period, which ran without notice from the first day of the month. The mortgage also required the Dunns to pay property taxes. The sanction for delinquent mortgage or property tax payments was acceleration and foreclosure at the Vonks' election. Finally, the mortgage required payment of the mortgagee's attorney's fees and costs in any collection proceeding.

For about three years, the Dunns made timely mortgage payments. For the first six months of 1986, however, the Dunns were late. The Vonks wrote the Dunns, putting them on notice that they must make their payments on time. The notice also called on the Dunns to pay delinquent property taxes. The Dunns acknowledged the reinstatement notice, paid the property taxes, and made timely payments for the rest of 1986.

However, the Dunns' bank mistakenly returned the February 1987 payment check marked "Insufficient Funds." The Vonks notified their attorney, who prepared to foreclose. The attorney learned that the Dunns had not paid their November 1986 property taxes. Without contacting the Dunns, the Vonks began foreclosure on February 27, 1987. The complaint alleged default for failure to make the February mortgage payment and the delinquent property taxes. At this point, the Dunns had paid nearly thirty-five percent of the purchase price.

After the Vonks' filed their complaint on February 27, 1987, the Dunns obtained and sent to the Vonks a letter from their bank stating that it had mistakenly dishonored their check. Subsequently, the Vonks offered to dismiss the action if the Dunns brought the payments current *and* paid attorney's fees and costs incurred to that time: $932.65.

The Dunns rejected this offer, arguing that the Vonks could have avoided the entire matter by contacting the Dunns during the note's ten-day grace period. The Dunns, however, paid the delinquent taxes in March 1987. In addition, during the intervening months the Dunns continued to make regular installment payments on the note, totalling $2,338, which the Vonks accepted. The record does not reveal the Vonks' reason for accepting these payments, but they nevertheless continued with the foreclosure proceeding. The parties did not raise the issue of waiver. Two months later, the trial court granted summary judgment to the Vonks. At the sheriff's sale, the Vonks purchased the property for the amount of their judgment.

On appeal, the Dunns argued the foreclosure was oppressive and unconscionable, relying on *Arizona Coffee Shops, Inc. v. Phoenix Downtown Parking Association,* 95 Ariz. 98, 387 P.2d 801 (1963). The court of appeals, however, did not reach this issue. It affirmed, reasoning that the Dunns' default in payment of the taxes justified acceleration of the note and foreclosure of the mortgage. *Vonk,* 159 Ariz. at 136, 765 P.2d at 538. The Dunns petitioned this court for review.

## DISCUSSION

On review from summary judgment, we view the record in a light most favorable to the party opposing summary judgment (the Dunns) and will affirm only if no genuine issue of material fact exists. *Browne v. Nowlin,* 117 Ariz. 73, 74, 570 P.2d 1246, 1247 (1977). Given those principles and the arguments advanced, we review this record to determine whether it could support a finding that the Vonks' foreclosure was unconscionable.

### A. The Dunns' Delinquency in Tax Payments

The note and mortgage allowed the Vonks to accelerate and foreclose for tax delinquency. However, a mortgage foreclosure is an equitable proceeding.

*Harbel Oil Co. v. Steele*, 83 Ariz. 181, 318 P.2d 359 (1957). Those who seek equitable relief "must do equity." *Arizona Coffee Shops*, 95 Ariz. at 100, 387 P.2d at 802. If a mortgagee has acted in an "oppressive or unconscionable" manner, the court may relieve the mortgagor of his default. *Id.* at 101, 387 P.2d at 803; *see also Baltimore Life Insurance Co. v. Harn*, 15 Ariz.App. 78, 81, 486 P.2d 190, 193 (1971), *rev. denied*, 108 Ariz. 192, 494 P.2d 1322 (1972). Indeed, as the Dunns argue, equitable considerations specifically apply to acceleration clauses. *Arizona Coffee Shops*, 95 Ariz. at 101, 387 P.2d at 802.

■ Because foreclosure is an equitable proceeding, the plaintiff must do more than merely establish that the defendant has violated the strict terms of the mortgage or note. The plaintiff must additionally show that some "purpose of the [acceleration] clause is ... being circumvented or that the mortgagee's security is jeopardized." *Harn*, 15 Ariz.App. at 81, 486 P.2d at 193; *see also Browne*, 117 Ariz. at 75, 570 P.2d at 1248 ("acceleration clauses are viewed as protective devices for the security of the lender"). Given these principles, we turn to the facts to determine whether summary judgment was appropriate.

■ The Dunns owed no more than $66 in property taxes and the arrearage was not of long duration. The county treasurer had not yet issued the "notice of delinquent taxes" required by A.R.S. § 42–385, nor did he commence proceedings for sale by issuing a "notice of proposed sale" as A.R.S. § 42–387 requires. Thus, the property was not in danger of being lost for tax delinquency. We believe that with equitable considerations in mind, a factfinder could find that the Vonks' invocation of the acceleration clause was unnecessary to protect their security.

1. The last payment was to be a substantial balloon payment.

2. During the summary judgment arguments, the Vonks also claimed the Dunns were in default for failing to keep the premises insured against fire loss. The Dunns pointed out that they purchased a vacant lot from the Vonks and despite

Further, the factfinder could have considered whether the breach of the tax obligation was trivial. Considering that the Dunns had already made forty-nine of the sixty note payments,[1] paying nearly thirty-five percent of the purchase price, the $66 tax delinquency appears insignificant. The factfinder could conclude that given the Dunns' investment, including the $4,000 down payment and their improvements on the property,[2] it was oppressive and unconscionable to accelerate and foreclose for a $66 tax arrearage without giving notice and an opportunity to cure. *See Arizona Coffee Shops*, 95 Ariz. at 102, 387 P.2d at 803.

In addition, the Dunns paid the delinquent property taxes in March 1987, well before the Vonks filed an amended complaint on April 28, 1987 and the motion for summary judgment on May 28, 1987. This fact distinguishes *Browne*, in which we held that the payment of two years' delinquent taxes *after* the grant of summary judgment was too late to cure the problem. *Browne*, 117 Ariz. at 76, 570 P.2d at 1249 ("equity, it is said, aids the vigilant"). Here, the Dunns paid early enough in the proceedings to receive the benefits of equity. *See generally* 55 Am.Jur.2d *Mortgages* § 393 (1971) (citing the rule in other jurisdictions allowing repayment of taxes after commencement of foreclosure proceedings).

Finally, the factfinder could certainly infer that the delinquent tax payment was only a secondary issue to the Vonks. They decided to foreclose when the bank dishonored the Dunns' February check. After it became clear that the bank had wrongfully dishonored the Dunns' check, the Vonks' original reason for foreclosing dissipated, yet they maintained the action solely because of nonpayment of the $66 in taxes.

Our past cases do not prohibit the application of equitable considerations to the

the boilerplate terms of the mortgage, there had been nothing to insure until the Dunns improved the property. All this is of marginal if any relevance, but it does point out that the Dunns might have increased the value of the Vonks' security.

question of whether late taxes should trigger acceleration clauses. In *Holman v. Roberts*, 35 Ariz. 110, 114, 274 P. 775, 780 (1929), we held that the mortgagee's extension of the time for payment did not excuse the mortgagor of his obligation to pay taxes on time. Nothing in *Holman*, however, precludes the factfinder from considering whether it is unconscionable for a mortgagee to accelerate the note for delinquency in tax payments. Surely, if equitable principles determine the propriety of acceleration for late payment of interest, *see Arizona Coffee Shops*, 95 Ariz. at 99, 387 P.2d at 802, they will apply to late payment of taxes.

We further noted in *Arizona Coffee Shops* that

> [t]here can be no doubt of the right of a chancellor to deny foreclosure based upon an acceleration where there are substantial equities in the case which render the acceleration unconscionable.

95 Ariz. at 101, 387 P.2d at 803 (quoting *Lieberbaum v. Surfcomber Hotel Corp.*, 122 So.2d 28, 28–29 (Fla.Dist.Ct.App.1960)).

We believe a reasonable factfinder could conclude that acceleration and foreclosure for the $66 tax delinquency was both oppressive and unconscionable. Because there was an issue of fact, the court of appeals improperly affirmed the grant of summary judgment on the ground that the taxes were delinquent.

### B. Late Payment and the Bank's Wrongful Dishonor of the Dunns' Check

The Vonks do not dispute that the bank wrongfully dishonored the Dunns' check for the February 1987 payment. They argue, however, that under the terms of the note and mortgage, they had no duty to notify the Dunns of the dishonored check. The Vonks contend that it was the Dunns' responsibility to pay on time and assert that the bank's wrongful dishonor of the Dunns' check was not their concern.

The Dunns argue that it was inequitable for the Vonks to initiate foreclosure proceedings without notice. A telephone call or letter could have prevented this litigation. Consequently, foreclosure was oppressive and unconscionable.

A check constitutes only conditional payment of the underlying obligation unless the parties agree otherwise. *Steele v. Vanderslice*, 90 Ariz. 277, 283, 367 P.2d 636, 639 (1961). Thus, if the mortgagor's bank dishonors his check, the mortgagee still has a right to receive payment. *Id.; see also Prevo v. McGinnis*, 142 Ariz. 298, 302, 689 P.2d 557, 561 (1984) (mortgagor cannot deliver a worthless check merely to delay the payment date); and *see generally* 60 Am.Jur.2d *Payment* § 57 (1987). Under this analysis, the Vonks argue, actual payment alone satisfies the creditor/mortgagee and a bank's wrongful dishonor is not the mortgagee's concern. The remedy for wrongful dishonor, the Vonks contend, is to allow the debtor/mortgagor to maintain an action against the bank for damages resulting from foreclosure. A.R.S. § 47–4402; *Valley National Bank v. Witter*, 58 Ariz. 491, 499, 121 P.2d 414, 418 (1942).

So rigid an analysis, however, is inconsistent with modern conditions, good legal policy, and existing law. Modern-day commerce involves the transfer and exchange of a huge volume of paper. Mortgage payments are expected to be made through the mail to the mortgagee's or collecting agent's place of business. Mortgagors in Arizona no longer saddle their horses and call on their mortgagees to tender gold coin in payment of their monthly obligations. Given the volume of computerized transactions, we must expect that banks will occasionally wrongfully dishonor checks. It would be bad law to hold that every time a bank wrongfully dishonors a check tendered for a mortgage payment, the mortgagee may accelerate and foreclose, the mortgagor lose his property, and the bank left to pay the damages as required by § 47–4402. Such a rule would effectively mean that one bank will pay another bank, and lawyers will get a share both going and coming. In our view, neither existing law nor common sense requires such a result.

Where payment by check through the mails is in accordance with business custom, the sending of a check properly mailed in due time even though not so received will prevent summary cancellation of the contract by the other party.

3A A. CORBIN, CORBIN ON CONTRACTS § 722, at 381 (1960); *see also id.* §§ 758 and 5A *id.* § 1235. This principle conforms to the *Arizona Coffee Shops* rule that equitable considerations apply to the invocation of an acceleration clause.

The tender of a "good" check in accordance with commercial practice and the wrongful dishonor of that check are matters a court must consider in determining whether equity will allow acceleration of the note and foreclosure of the mortgage.[3] *See Arizona Coffee Shops,* 95 Ariz. at 100, 102, 387 P.2d at 802, 803 (illness of bookkeeper resulting in late tender of check for mortgage payment was circumstance court must consider on the issue of unconscionability). The Vonks incorrectly assert that our court of appeals has held that equity will not relieve a mortgagor from late payments resulting from "mistake." Actually, our court of appeals held that it will not relieve a mortgagor from a default "caused *by his* negligence, mistake or by accident" when the mortgagee has not acted in bad faith or fraudulently. *Ciavarelli v. Zimmerman,* 122 Ariz. 143, 144–45, 593 P.2d 697, 698–99 (Ct.App.1979) (emphasis added).[4] As *Ciavarelli* recognized, the court may protect a mortgagor from a default that results from accident, a good faith mistake, or some unusual circumstance beyond his control. *Id.* at 145, 593 P.2d at 699.

Here, the undisputed fact remains that the bank wrongfully dishonored the Dunns' check to the Vonks. Thus, the Dunns were technically in default not because of their own mistake or accident but because of the bank's. This certainly was a circumstance beyond the Dunns' control. *Arizona Coffee Shops; First Federal Savings & Loan Association v. Ram,* 135 Ariz. 178, 180, 659 P.2d 1323, 1325 (Ct.App.1982) (asserting same rule, but trial court had sufficient evidence from which to conclude that the default resulted from the mortgagor's own neglect).

We hold, therefore, that the factfinder could decide it was oppressive and unconscionable to permit the Vonks to accelerate the note and foreclose the mortgage because the bank wrongfully dishonored the Dunns' check for the monthly payment. Thus, the trial judge improperly granted summary judgment.

We must address one further issue. As the statement of facts indicates, the Vonks offered to dismiss the foreclosure action and reinstate the mortgage if the Dunns reimbursed them for their attorney's fees. The Dunns refused. The merits of each position bear on the equities relating to permitting foreclosure. Also, either party could argue that the bank, because it wrongfully dishonored the check, should eventually be liable to the Dunns for attorney's fees. A.R.S. § 47–4402. The trial court could allocate fees under A.R.S. § 12–341.01. After hearing the evidence, the trial court, rather than this court, should settle these arguments and determine the equities regarding the attorney's fee issue.

## CONCLUSION

We conclude that the trial judge erred by granting summary judgment. The following are all matters the factfinder should consider in determining whether acceleration and foreclosure were unconscionable: the mortgagors' timely tender of a valid check, the bank's wrongful dishonor of that check, the trivial nature of the mortgagors' breach of the covenant to pay taxes, the amount the Dunns had already paid on the

---

**3.** We need not answer the more difficult question whether, when a bank has properly dishonored a check, the mortgagee must give the mortgagor notice of default and an opportunity to cure. The answer depends on the course of dealing between the parties. *See Kammert*

*Brothers Enterprises, Inc. v. Tanque Verde Plaza Co.,* 102 Ariz. 301, 428 P.2d 678 (1967).

**4.** When discussing this rule and directly quoting from *Ciavarelli,* the Vonks' brief in the court of appeals left out the two words of the case that we emphasized. Appellees' Brief at 9.

property, the making and acceptance of payments after the purported acceleration, the danger to the Vonks' security, and the Vonks' offer to withdraw the foreclosure action on payment of attorney's fees.

Accordingly, we vacate the court of appeals' opinion and reverse the judgment. We remand the case for further proceedings consistent with this opinion.

GORDON, C.J., and MOELLER and CORCORAN, JJ., concur.

CAMERON, Justice, specially concurring,

I concur in the result only. The issue in this case is whether the trial judge erred by granting summary judgment for the Vonks. Summary judgment is proper when there are no material issues of fact in dispute and when the party moving for summary judgment is entitled to judgment as a matter of law. *Luplow v. Pasqualetti Properties, Inc.*, 101 Ariz. 90, 91, 416 P.2d 414, 415 (1966). In this case no material transactional facts are in dispute. However, whether foreclosure is unconscionable is also a question of fact, not law, and because the fact of unconscionability is contested the Vonks were not entitled to summary judgment. *Arizona Coffee Shops, Inc. v. Phoenix Downtown Parking Ass'n*, 95 Ariz. 98, 102, 387 P.2d 801, 803 (1963) (mortgagee's allegation of unconscionable foreclosure and affidavit in support thereof were sufficient to create an issue for the trier of fact precluding summary judgment). For this reason, I agree with the majority that summary judgment was inappropriate in this case.

I believe, however, that the majority opinion goes much further than merely stating that summary judgment was inappropriate. The majority opinion could be construed as indicating that the foreclosure was in fact unconscionable. A review of the facts will show that this is not necessarily so.

Upon discovering that the bank wrongfully dishonored the check, the Vonks offered to dismiss the foreclosure action if the Dunns would pay their attorney's fees and costs incurred to that date. I believe the trial judge could find that this satisfied the Vonks' duty to act equitably for two reasons. First, the Dunns had agreed, in the mortgage agreement, to pay for any attorney's fees the Vonks incurred in any collection proceeding. Second, the Dunns, unlike the Vonks, were the logical party to bring a suit against the bank to recover the amount of the attorney's fees and costs.

The majority also implies that the Vonks' conduct was unconscionable because they failed to notify the Dunns that the check had bounced before they contacted their attorney. The entire litigation, the majority states, could have been avoided if the Vonks would have just called the Dunns. However, it can just as easily be said that the entire litigation could have been avoided if the Dunns would have accepted the Vonks' settlement offer and then sued their bank for their costs. The effect of the majority opinion is to discourage people from contacting their attorney quickly when their rights or claims are at stake. I believe this is bad policy.

Furthermore, I do not think it was unreasonable for the Vonks not to suspect a bank error when the check was dishonored. Two reasons support this proposition. First, prior to the bank error, the Dunns had had trouble making their monthly payments. Second, even though, as the majority states, because of the volume of computerized transactions, banks will occasionally wrongfully dishonor a check, the vast majority of times a check is dishonored, it is because the account does not contain sufficient funds, not because the bank erred. I do not think it unreasonable nor necessarily unconscionable that the Vonks did not consider the possibility of a bank error before contacting their attorney. Unfortunately, the majority opinion could lead the trial judge to believe that this was unconscionable conduct.

The majority also implies that the Vonks had no reason to believe their security was in jeopardy. I disagree. The Dunns had made a total of seven late payments, five of which were in consecutive months. These seven payments were 19, 16, 11, 86,

13, 25 and 24 days late, respectively. This alone was reason enough to cause the Vonks to feel uneasy about their security and about receiving payment.

Furthermore, the loan was arranged such that the monthly payments were only $259.79 and a large balloon payment of $16,787.85 was due at the end of five years. The balloon payment was almost 70% of the total loan amount and was coming due just eleven months after the Dunns' check for a mere $259 was dishonored. Admittedly, the check was wrongfully dishonored, but the Vonks did not know this at the time and therefore had reason to believe their security was in jeopardy and reason to begin foreclosure proceedings.

The majority also states that the Vonks' security was not in jeopardy due to the delinquent taxes because the amount past due was so "trivial." However, I believe this is the very reason why the Vonks had cause to be concerned about their security. When a debtor has not paid a mere $66 past due tax payment, it surely reflects on his or her ability to pay a $16,787 balloon payment in less than one year.

Furthermore, the majority fails to acknowledge that the Dunns had also paid the prior year's tax assessment late and the Vonks, prior to the $66 in taxes becoming delinquent, gave the Dunns notice that if they again failed to pay the taxes on time, they would foreclose. The Vonks letter to the Dunns, dated 31 July 1986, states in part:

> Our demand for strict performance relates not only to timely payments of principal and interest, but also to all other terms of the note and mortgage, including payment of taxes on the subject property before such taxes become delinquent. As you have been advised, the 1985 taxes are unpaid, past due, and delinquent; and, as provided for in the mortgage, this is a default which entitles us to declare the unpaid balance of the note and mortgage to be immediately due and payable....
>
> ... [I]n the event of any other default under the terms of the note and mortgage, you are hereby put on notice that we will, immediately and without further notice or demand, declare the balance of the note and mortgage to be due and payable and forthwith file action for judicial foreclosure.

At the time the check was dishonored only 24% of the loan and only 35% of the total purchase price had been paid. This is not a case in which the mortgagor paid a majority of the purchase price, missed one payment, and the mortgagee foreclosed. On the contrary, the Vonks had been patient with the Dunns. The Vonks had written numerous letters between April, 1986 and July, 1986 regarding late payments and demanding timely payment. In fact, the Vonks notified the Dunns in May, 1986 that they intended to begin foreclosure proceedings on 16 June 1986 because the May payment was late. When the Vonks received the May payment they then notified the Dunns that they would wait for the June payment before taking any action. When the June payment was also late, the Vonks notified the Dunns that they would begin foreclosure proceedings on 11 July 1986. When the July payment was also late, the Vonks, instead of beginning foreclosure, gave the Dunns written notice that they would no longer accept late payments and would begin foreclosure proceedings if any future payment was late. Thereafter, the Dunns made timely payments until the February check was dishonored.

The majority also fails to acknowledge that the Dunns were aware of exactly what would happen if they failed to comply with the terms of the mortgage. In a letter written to the Vonks, the Dunns stated:

> If we fail to make a payment, or if we are later than the agreed upon "grace" period", [sic] you start proceedings to take the property back. At that time, if we wish to keep the property we have to pay the late payment and any legal fees you incurred in taking the property back. If we failed to pay the late payment and all legal fees then we would lose the down payment, all monies already paid to you in payments, and any improvements we made on the property....

The majority lists many factors that the trial judge should consider in determining whether the foreclosure was unconscionable. I believe in addition to those factors enumerated by the majority, the trial judge should also consider the additional facts enumerated in this concurring opinion.