**AZTEC GAS & OIL CORPORATION, a Nevada Corporation, Appellant (Defendant),**

v.

**ROEMER OIL COMPANY, a Colorado Corporation, Appellee (Plaintiff).**

No. 96–180.

Supreme Court of Wyoming.

Dec. 5, 1997.

Jon B. Huss and Drew A. Perkins of Brown, Drew, Massey & Sullivan, Casper, for Appellant.

Timothy R. Beyer and Peter J. Korneffel, Jr. of Baker & Hostetler, Denver, CO; and Joseph E. Hallock of Stevens, Edwards & Hallock of Gillette, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

LEHMAN, Justice.

Appellant Aztec Gas and Oil Corporation (Aztec) appeals entry of judgment in favor of Appellee Roemer Oil Company (Roemer) for $14,912.00.

We affirm.

## ISSUES

Although the parties cite six issues in their briefs, we find the following two issues determinative:

I. Under what circumstances does a check constitute legal tender?

II. Can a drawer of a check unilaterally modify the time period a check holder has for presentment?

## FACTS

This dispute arose over payments due under a settlement agreement entered into to resolve litigation which was the subject of *Roemer Oil Co. v. Aztec Gas & Oil Corp.*, 886 P.2d 259 (Wyo.1994). The settlement agreement required Aztec to pay Roemer $15,261.48 in six payments, and included a confession of judgment signed by Aztec to secure payment of the settlement amount. The default provision of the settlement agreement provided that in the event Aztec failed to make timely payments Roemer could enter the confession of judgement if, after written notice of default from Roemer, Aztec failed to cure default within ten days. The confession of judgment also purportedly waived all of Aztec's defenses to the entry of judgment.

Aztec paid each installment by check. Aztec made the first payment on time, but all subsequent payments were late. Approximately two weeks after Roemer received the fifth payment, Aztec contacted Roemer and twice requested that Roemer promptly deposit the fifth payment check because Aztec intended to close the account on which the check was drawn. Two weeks later when Roemer presented the check, approximately thirty days after its receipt, the check was dishonored.

Roemer accepted Aztec's sixth payment check, but when Aztec attempted to reissue the fifth payment, Roemer refused payment. Instead, Roemer moved for entry of judgment in district court to enforce the confession of judgment as provided by the settlement agreement. Aztec responded by opposing Roemer's motion and moving to dismiss the case with prejudice. The district court conducted a telephonic hearing on the motions and granted Roemer's motion, finding that Aztec came before the court "with unclean hands for failure to make any of the payments, except the first $3,000 payment, in a timely manner on the dates contained in the Settlement Agreement." Aztec timely appeals.

## DISCUSSION

### Standard of Review

■ The parties stipulate to all the material facts in the case, so no factual issues for review exist. Our review, therefore, is de novo, limited to questions of law to which we accord no deference to the district court. *Anderson v. Bommer*, 926 P.2d 959, 961 (Wyo.1996); *Treemont, Inc. v. Hawley*, 886 P.2d 589, 592 (Wyo.1994). This dispute arises over a settlement agreement; we have previously held that a settlement agreement is a contract, subject to the same legal principles as those which apply to any contract. *Matter of Estate of McCormick*, 926 P.2d 360, 362 (Wyo.1996) (*citing Idaho Migrant Council, Inc. v. Warila*, 890 P.2d 39, 41 (Wyo.1995)).

### When Checks Constitute Legal Tender

To determine if the dishonored check issued to Roemer for the fifth payment cured Aztec's default, we must first address when a check constitutes legal tender. Payment by check is governed by both the common law and the Revised Uniform Commercial Code (UCC), which we adopted as W.S. 34.1-1-101 through 34.1-10-104 (1997). Although the UCC generally governs transactions involving negotiable instruments, W.S. 34.1-1-103 provides that "[u]nless displaced by the particular provisions of this act * * *, the principles of law and equity * * * shall supplement its provisions."

Our jurisdiction has previously given little attention to the concept of legal tender at common law. We have held that actual tender of money, as opposed to a mere offer to pay, is necessary to constitute legal tender. *See Radalj v. Union Savings & Loan Ass'n,* 59 Wyo. 140, 138 P.2d 984, 999 (1943). A number of courts have held that when a debtor delivers a check to a creditor,

> the original debt is not paid or discharged unless, and until, the check itself is actually paid on due presentment, or, it is sometimes stated, until it is honored or accepted by the drawee; and, where the check is not paid on presentment, the creditor may treat it as a nullity, return it, and recover on the original debt, or, at his option, sue on the check.

70 C.J.S. *Payment* § 18, at 21–22 (1987 & Supp.1996) (footnote citations omitted). We particularly agree with the Nevada Supreme Court's analysis of the legal tender of a check:

> [P]ayment by check, without objection, does not discharge a debt until the check is honored. Once honored, the time of payment relates back to the time the check was delivered. If the check is *not honored,* however, the payment is not deemed made until cash is actually received or a subsequent check honored.

*R & S Investments v. Howard,* 95 Nev. 279, 593 P.2d 53, 56 (1979) (emphasis in original). This approach is consistent with Article 2 of the UCC and other regional case law. *See Gudenau v. Bierria,* 868 P.2d 907, 911 (Alaska 1994) ("A check is proper payment for an obligation, and so long as the check is honored, the obligation is considered paid when the payee receives it."). *See also* UCC 3–310 (rev'd 1990) and *Vonk v. Dunn,* 161 Ariz. 24, 775 P.2d 1088, 1091 (1989) ("A check constitutes only conditional payment of the underlying obligation unless the parties agree otherwise.").

One of the purposes of the UCC is to encourage consistency in and continued expansion of our commercial practices. W.S. 34.1–1–102(b). Although UCC Article 2, adopted at W.S. 34.1–2–101 through 34.1–2–725, governs the sale of goods and is not directly applicable to the settlement agreement between the parties, it nevertheless provides useful guidance on how we should perceive transactions involving checks.

Wyoming Statute 34.1–2–511(c), in pertinent part, states that "payment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment." Official Comment 4 to UCC 2–511 explains that "[t]his Article recognizes that the taking of a seemingly solvent party's check is commercially normal and proper and, if due diligence is exercised in collection, is not to be penalized in any way." Official Comment 5 states that "[u]nder subsection (3) payment by check is defeated if it is not honored upon due presentation." *See also Bolz v. Security Mut. Life Ins. Co.,* 721 P.2d 1216, 1218 (Colo.App.1986) ("Payment by check is conditional only and does not discharge the liability for which payment is given, unless there is an express or implied agreement that the check [will] be accepted as absolute payment."). *See also* UCC 2–511.

 We adopt a definition of legal tender consistent with both the UCC and regional common law and hold that payment by check does not discharge a debt unless and until the check is honored; once honored, the time of payment relates back to the time the check is delivered. Since Aztec's check was dishonored, it did not discharge Aztec's obligation to make the fifth payment under the settlement agreement or cure Aztec's default. Thus, entry of judgment was appropriate.

### Modification of Presentment Time

Aztec argues that this court should find that Aztec's fifth payment check, even though dishonored, cured Aztec's default because Roemer had a duty to promptly present the check. This duty, Aztec asserts, arose because Aztec requested prompt presentment and, at the time of the request, adequate funds existed in the account. In support of this assertion, Aztec cites to *J.S. Martin Lumber Co. v. Rice,* 136 Okla. 172, 276 P. 733, 734 (1929) and *Federal Land Bank v. Barrow,* 189 N.C. 303, 127 S.E. 3, 6 (1925). Both cases, however, precede our adoption of the UCC.

■ Our statute now provides that a check will remain valid for a minimum of ninety days. Wyoming Statute 34.1–3–304(a) states that "[a]n instrument payable on demand becomes overdue at the earliest of the following times: * * * (ii) If the instrument is a check, ninety (90) days after its date." Thus, Roemer could legitimately expect that the check would not become stale for ninety days. Wyoming Statute 34.1–3–117 specifically provides that

> the obligation of a party to an instrument to pay the instrument may be modified, supplemented, or nullified by a separate agreement of the obligor and a person entitled to enforce the instrument, if the instrument is issued or the obligation is incurred in reliance on the agreement or as part of the same transaction giving rise to the agreement.

Absent prior agreement to the contrary, Aztec could not unilaterally alter Roemer's right to the ninety-day period to present a check as provided by statute.

### CONCLUSION

We find Aztec's appeal did raise legitimate legal issues regarding legal tender and, therefore, decline to award attorney fees. Aztec's fifth payment check did not cure default because a dishonored check does not constitute legal tender and because Aztec could not unilaterally modify the time a check holder has for presentation. We therefore affirm the judgment in favor of Roemer.

THOMAS, Justice, dissenting.

Aztec Gas & Oil Corporation (Aztec) and Roemer Oil Company (Roemer) agreed to settle their differences over amounts owed by Aztec to Roemer under an oil and gas operating agreement. *See Roemer Oil Co. v. Aztec Gas & Oil Corp.*, 886 P.2d 259 (Wyo. 1994). Aztec was to pay Roemer $15,261.48 in six payments. The settlement agreement encompassed a right on the part of Roemer to file a Confession of Judgment against Aztec for "$26,000.00 together with reasonable costs (but not attorneys' fees) for filing and collecting the judgment, prejudgment interest at the rate of 8% compounded annually from the date of [the] Settlement Agreement, and post judgment interest," minus amounts paid pursuant to the agreement, in the event of a breach of the Settlement Agreement by Aztec. When Roemer claimed a breach for failure to make the December payment, it requested entry of judgment for $14,900.60, representing the difference between the claimed amount and the amounts admittedly paid.

In the Final Judgment entered upon a Motion for Entry of Judgment, filed by Roemer, and a Motion for Dismissal with Prejudice, filed by Aztec, the district court found that Aztec had failed to make a payment as required by the Settlement Agreement, and it had not cured the default. The court specifically found "that Aztec comes before the court with unclean hands for failure to make any of the payments, except the first $3,000.00 payment, in a timely manner on the dates contained in the Settlement Agreement." In fact, the Settlement Agreement specifically anticipated late payments and provided:

> 3. *Default.* The parties agree that, if Aztec fails to make any payment required under paragraph 1 of this Settlement Agreement, then Roemer upon (1) written notice to Aztec, and (2) Aztec's failure to cure its default within ten days of Roemer's written notice, may, in the alternative to otherwise enforcing this Settlement Agreement, file, enforce and collect the Confession of Judgment, a copy of which is attached hereto as Exhibit "B". Aztec shall execute the Confession of Judgment contemporaneously with the execution of this Settlement Agreement. With the Confession of Judgment, Roemer shall file and serve upon Aztec a duly executed affidavit as proof of Aztec's default. * * * Roemer also agrees that it will not file or seek to enforce the Confession of Judgment except upon Aztec's failure to make any payment and failure to cure as provided in this paragraph.

After the first check, the other payments by Aztec to Roemer were late, but the checks uniformly were written and furnished to Roemer within the ten day period provided in the parties' Settlement Agreement. It is

fair to say that Roemer treated each check, save one, as payment for purposes of the default provision of the agreement. In accordance with the established practice, a check was furnished to Roemer for the payment it claims as the default. After Aztec made the December payment, it requested Roemer to promptly negotiate the check because Aztec intended to close the checking account on which the check was written. Aztec twice requested that the check be forwarded for collection so that it would clear the account before it was closed. The parties stipulated to the truth of averments in the affidavit of Charles Blackard, the controller for Aztec Gas and Oil Corporation, that stated among other things:

> 5. By mid-January 1996 I noticed that Roemer had not cashed these checks. During the week of January 15, 1996 I called Roemer representative Steve Swanson and advised him to cash the checks promptly, since Aztec was going to close the account upon which they were drawn. Approximately one week later I called Mr. Swanson again, and again advised him to promptly cash the checks. Aztec even offered to replace the checks with cashiers checks, if Mr. Swanson would return the two checks. Mr. Swanson indicated that he did not have the checks and that they had been sent off for processing.

Another paragraph of the Settlement Agreement provides:

> 7. *Further Assurances.* From time to time after the execution of this Settlement Agreement, the parties shall, without charge, perform such other acts, and shall execute and deliver and shall furnish such other instruments, documents, materials and information, as may be reasonably necessary to effectuate the acts provided for in this Settlement Agreement.

This contractual language surely is sufficiently broad to cover the simple act of negotiating a check within thirty days, upon the specific request of the other party. The RESTATEMENT (SECOND) OF CONTRACTS § 205 (1979) states, "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforce-

ment." We have relied upon this provision, citing it with approval, and have said:

> The implied covenant of good faith and fair dealing is present in every contract:
>> § 205 Duty of Good Faith and Fair Dealing
>>> Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

Restatement (Second) of Contracts § 205 (1981).

*State Farm Mut. Auto. Ins. Co. v. Shrader,* 882 P.2d 813, 825 (Wyo.1994). We acknowledged this provision in *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 220 (Wyo.1994), and *Husman, Inc. v. Triton Coal Co.,* 809 P.2d 796, 801 (Wyo.1991). I would adopt this rule for Wyoming and apply it in this case.

My rhetorical question is where do we find good faith and fair dealing on the part of Roemer with respect to this check. Roemer, obviously whiffing the scent of blood, did not negotiate the check until some thirty days after it was sent by Aztec, at which time the account had been closed, and the check was returned. Aztec provided a replacement check (another stipulated fact), but Roemer refused to accept that check, even though it had accepted and received payment of the sixth check (another stipulated fact). Roemer took the position that the settlement agreement had been breached and proceeded to file the Confession of Judgment. When Aztec sought relief from the district court, the district judge entered Final Judgment in favor of Roemer for $14,912.00.

The result in this case is that Aztec has paid $12,225.03 on the settlement agreement; has endeavored to pay the balance; and now has a judgment against it for an additional $14,912.00, for a total recovery by Roemer of $27,137.03, almost double the amount agreed upon in the Settlement Agreement. The district court refused relief to Aztec, holding that it came seeking equity without clean hands because of the continual history of late payments. No stain apparently attached to Roemer with respect to holding a check it had been requested to cash and then claim-

ing that Aztec had breached the contract when the check failed to clear the account.

I am satisfied that this is an instance in which the law has perpetrated an injustice on Aztec. Consequently, I would reverse the decision of the trial court, holding that there had been performance under the terms of the contract by Aztec, and Roemer is the party in default because it did not manifest good faith and fair dealing consistent with paragraph seven of the Settlement Agreement when it did not honor the request for prompt presentment of the check. I would reverse, holding that Roemer is not entitled to the Final Judgment resulting from its filing of the Confession of Judgment.